Ollie THOMPSON, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–00253–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 21, 2002.

Shawna L. Reagin, Houston, for Appellant.

Kelly Ann Smith, Assistant District Attorney, Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and RADACK.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Ollie Thompson, III, challenges the convicting court's order denying his motion for post-conviction DNA testing. In his sole point of error, appellant argues that the trial court erred in denying his motion because he established by a preponderance of the evidence that he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing of the state's trial evidence. We affirm.

1. Appellant's conviction was affirmed by this court. *Thompson v. State*, No. 01–95–01518–CR, 1997 WL 81168 (Tex.App.-Houston [1st

## Factual and Procedural Background

On December 8, 1995, a jury found appellant guilty of the offense of aggravated assault with a deadly weapon and assessed his punishment at 50 years confinement.[1] On October 16, 2001, appellant filed a *pro se* motion for forensic DNA testing of biological evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 64.01–.05 (Vernon Supp.2002). The trial court appointed counsel to represent appellant after the motion was filed. *See id.* at art. 64.01(c). After the State filed its written response to the motion for DNA testing, the trial court considered the arguments of counsel for both parties, and denied the motion.

The underlying facts at trial showed that the complainant was assaulted by three men, including the appellant, and that appellant cut the complainant with a box cutter. The complainant testified that the assailants approached him to purchase cocaine. After the complainant refused to sell them cocaine, he was struck on the back of the head with a bottle, and he then tried to run away. The assailants caught the complainant, and appellant cut the complainant on the neck and arm. After the assault, the complainant reported the incident to a Houston Police officer and gave a general description of the three men. A few minutes later, another officer detained appellant and another man who met the description of the assailants. The officer found an orange box cutter, which appeared to have blood on it, on the ground where appellant had been standing. The officer then took appellant, the codefendant, and the box cutter to the complainant. The complainant identified the men as two of his assailants and the box cutter as the weapon used against him

Dist.] February 27, 1997, no pet.) (not designated for publication).

during the attack. The complainant was later taken to a hospital where he received 175 stitches in his neck and 75 stitches in his right arm.

## Statutory Jurisdiction

■ Initially, the State argues that this Court has no statutory authority to consider this appeal because appellant's motion was inadequate and the trial court, without holding an evidentiary hearing, summarily denied the motion without ruling on the merits. Article 64.03 of the Code of Criminal Procedure provides, in pertinent part, as follows:

(a) A convicting court may order forensic DNA testing under this chapter only if:

(1) the court finds that:

(A) the evidence:

(i) still exists and is in a condition making DNA testing possible; and

(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and

(B) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

(A) a reasonable probability exists that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

TEX.CODE CRIM. PROC. ANN. art. 64.03(a).

An appeal of a finding under article 64.03 or 64.04 is taken to a court of appeals unless the appellant's conviction is for capital murder. TEX.CODE CRIM. PROC. ANN. art. 64.05. The Texas Court of Criminal Appeals has addressed the statutory jurisdiction of an appellate court to hear appeals of a convicting court's findings under Chapter 64. *See Kutzner v. State,* 75 S.W.3d 427, 432 (Tex.Crim.App.2002). After examining the legislative history of Chapter 64, the Court found nothing to indicate a legislative intent to foreclose an appeal of a convicting court's article 64.03(a)(2) determination. *Id.* at 433. The Court explicitly "rejected" a "narrow and hypertechnical construction of Article 64.05." *Id.* at 432. Moreover, the Court held that "the Legislature intended to authorize *appellate review of all* of the convicting court's Article 64.03 determinations." *Id.* at 434 (emphasis added).

After considering the motion and affidavit of appellant and the State's written response, the trial court denied appellant's motion for DNA testing without holding an evidentiary hearing. Such a preliminary ruling under article 64.03 does not preclude an appeal. In fact, nothing in article 64.30 requires a hearing of any sort concerning a trial court's determination of whether a defendant is entitled to DNA testing. *See Rivera v. State,* 89 S.W.3d 55 (Tex.Crim.App. 2002). Thus, we hold that Article 64.05 authorizes this Court to review the trial court's findings, express or implied, on appellant's Chapter 64 motion.

## Sufficiency of Motion

■ In his sole point of error, appellant contends that the trial court erred in denying his motion for DNA testing because the motion and supporting affidavit satisfied the statutory requirements of article 64.03.

An applicant, in order to obtain forensic DNA testing, must establish by a preponderance of evidence that a reasonable probability exists that he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing. TEX.CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). The Court of Criminal Appeals has interpreted this to mean that an applicant must show "a reasonable probability exists that exculpatory DNA tests will prove [his] innocence." *Kutzner*, 75 S.W.3d at 438.

Appellant, in his brief, contends that he has met the "reasonable probability" standard by showing that the evidence to be tested is in the possession of the State and, at the time of trial, it contained biological material that if subjected to testing would "more likely than not either establish the identity of the person committing the offense or exclude a person from the group of persons who could have committed the offense." Appellant contends that the only evidence linking him to the offense, outside of the complainant's identification of appellant, was the orange box cutter found on the ground near appellant when he was arrested. Appellant points out that, at trial, a police officer testified that the knife had blood on it. During its closing argument, the State argued that the substance on the knife was blood and that appellant had blood on his shirt. Appellant argues that, had the complainant's identification of appellant not been supported and bolstered by the bloody box cutter, "the jury likely would have entertained a reasonable doubt as to his guilt."

Whether the jury "likely would have entertained a reasonable doubt" as to appellant's guilt does not constitute a reasonable probability that exculpatory DNA tests would prove his innocence. Here, we cannot conclude that exculpatory DNA tests on the box cutter would prove appellant's innocence. The bloody box cutter was not the only evidence available to the State. The record reflects that appellant, who met the physical description of one of the assailants, was arrested in close proximity to the crime a few minutes after the assault. The complainant testified that he was cut with an orange box cutter, and he identified appellant at the scene of the crime as one of his assailants, just minutes after the assault. Moreover, the box cutter was found on the ground near appellant at the time of his arrest. Thus, even if DNA testing proved that the box cutter did not contain complainant's blood or any blood at all, it would not prove appellant's innocence. Even if negative test results were to supply an exculpatory inference, such an inference in this case would not conclusively outweigh the other evidence of appellant's guilt. *See Rivera*, (holding absence of DNA under murder victim's fingernails and negative result from rape kit would not indicate innocence of capital murder).

At best, exculpatory DNA tests on the box cutter would "merely muddy the waters." *See Kutzner*, 75 S.W.3d at 439. Here, the record supports an implied finding by the convicting court that no reasonable probability exists that exculpatory DNA testing of the box cutter would prove appellant's innocence. Thus, we hold the convicting court did not err in denying appellant's motion for DNA testing.

We overrule appellant's sole point of error.

## Conclusion

We affirm the order of the convicting

court.[2]

**2.** We have reconsidered our order of September 5, 2002, and conclude that written findings of fact signed by the trial court, if any, are not necessary to the resolution of this appeal. We therefore order withdrawn our September 5, 2002 order.