

# NUMBER 13-20-00357-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**LUZALBERT HERNANDEZ,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

Appellant Luzalbert Hernandez appeals the trial court's denial of his post-conviction motion for DNA testing brought under Chapter 64 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01.

In what we construe as four issues, Hernandez contends that (1) the trial court

erred by finding identity was not and is not an issue in this case; (2) the evidence still exists and is in a condition suitable for testing; (3) the evidence has been subjected to a sufficient chain of custody; and (4) Hernandez has shown by a preponderance of the evidence that he would not have been convicted had exculpatory results been obtained through DNA testing. We affirm.

## I. BACKGROUND[1]

Hernandez, Adam Joshua Arredondo, and Emilio Suniga III were indicted "as parties or principals" for the offenses of engaging in organized criminal activity, aggravated robbery, and aggravated assault, each arising out of the alleged robbery of the J.P. Game Room in Victoria, Texas, on or about March 27, 2016. *See* TEX. PENAL CODE ANN. §§ 71.02, 29.03, 22.02.

Henry Nguyen, the manager of the J.P. Game Room, testified that on March 27, 2016, two men wearing masks and gloves entered the game room. One pointed a gun at Nguyen's head and told him to go inside his office. Once inside the office, the masked men took the money Nguyen had on him—which was about $3,000—along with his wallet

---

[1] In its order denying Hernandez's motion for DNA testing, the trial court took judicial notice of its files from Hernandez's trial. We note that the Court of Criminal Appeals has held that, in Chapter 64 proceedings, "all of the evidence that was before the trial court before it made its ruling should be available to, and considered by, the reviewing court." *Asberry v. State*, 507 S.W.3d 227, 229 (Tex. Crim. App. 2016). We also note that an "appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties." *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987); *see Flores v. State*, 491 S.W.3d 6, 7 n.1 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Jacobs v. State*, 115 S.W.3d 108, 112-13 (Tex. App.—Texarkana 2003, pet. ref'd); *see also State v. Bryan*, No. 11-17-00236-CR, 2019 WL 6337604, at *2 (Tex. App.—Eastland Nov. 27, 2019, no pet.) (mem. op., not designated for publication); *Ambriati v. State*, No. 09-15-00065-CR, 2015 WL 6998616, at *1 (Tex. App.—Beaumont Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication). Bearing this in mind, on our own motion, we take judicial notice of the appellate records from Hernandez's direct appeal of his underlying conviction for the purpose of resolving the appeal before us. *See Hernandez v. State*, No. 13-17-00415-CR, 2018 WL 4016779, at *1–4 (Tex. App.—Corpus Christi–Edinburg, Aug. 23, 2018, pet ref'd) (mem. op., not designated for publication).

and cell phone. The men ordered Nguyen to lie on the floor and proceeded to tear through the office looking for more money. Nguyen stated that he was struck in the head with a gun.

Arredondo and Suniga testified that they pleaded guilty to the aggravated robbery of Nguyen and one of Nguyen's employees, Eric Estrada. Both testified to the details of the robbery and assaults of Nguyen and Estrada, named Hernandez as a member of their gang, the Sureños 13, and identified him as a party to the robbery and assault. Arredondo testified that he and Hernandez were the two masked and gloved robbers.

A single blue glove was recovered from the crime scene by law enforcement, matching the gloves that the masked robbers were wearing during the commission of the offenses. Officer Dakota McCarthy testified that he handled the recovered glove without wearing gloves himself. On cross-examination, McCarthy attested that it is possible the evidence may have been contaminated because manner of handling.

Upon conclusion of trial, the jury charge included an instruction concerning the law of parties. The jury charge also permitted a guilty verdict if it was found that Hernandez committed the offenses "either acting alone or with another or others as a party to the offense." The jury returned guilty verdicts for one count of engaging in criminal activity and two counts of aggravated robbery "as alleged in the indictment." Hernandez then appealed his conviction, which was affirmed. *Hernandez v. State*, No. 13-17-00415-CR, 2018 WL 4016779, at *1–4 (Tex. App.—Corpus Christi–Edinburg, Aug. 23, 2018, pet ref'd) (mem. op., not designated for publication).

Subsequently, Hernandez filed a motion for DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure, requesting testing on the glove recovered from the crime scene. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01. The trial court denied the motion, and Hernandez appealed. After we abated this appeal for findings concerning Hernandez's indigency, the trial court issued findings of fact and conclusions of law, including (1) that identity was not and is not an issue in the case and (2) that Hernandez failed to demonstrate by a preponderance of the evidence that he would not have been convicted had exculpatory results been obtained through DNA testing. *See id.* arts. 64.03(a)(1)(C), 64.03(a)(2)(A). This appeal followed.

## II.     APPLICABLE LAW & STANDARD OF REVIEW

Under Chapter 64 of the Texas Code of Criminal Procedure, "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." *Id.* art. 64.01(a-1). To be entitled to DNA testing under Chapter 64, several requirements must be met first. See *id.* arts. 64.01, 64.03; *see also Hall v. State*, 569 S.W.3d 646, 655 (Tex. Crim. App. 2019) (confirming that to be entitled to postconviction DNA testing, "a convicted person must satisfy the requirements of Chapter 64 of the Code of Criminal Procedure"). The convicting court may order forensic DNA testing only if the statutory preconditions are met. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03.

Before a trial court may order DNA testing under Chapter 64, it must first find:

(A)     the evidence:

(i)     still exists and is in a condition making DNA testing possible; and

4

(ii)    has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

(B)    there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and

(C)    identity was or is an issue in the case.

*Id.* art. 64.03(a)(1).

Additionally, the movant must show, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained through DNA testing, and that the request for DNA testing is not made to unreasonably delay the execution of sentence or administration of justice. *Id.* art. 64.03(a)(2)(A). To meet the burden of the Chapter 64 requirements, a convicted person must provide statements of fact in support of his claims; general, conclusory statements are insufficient. *Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010) (stating that "a mere assertion or a general claim" will not satisfy Chapter 64 burden).

When reviewing a ruling on a motion for DNA testing, we defer to the "trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues." *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). However, because the trial court did not conduct a live hearing on the post-conviction motion for DNA testing, we review the issues raised de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

5

## III.    TEX. CODE. CRIM. PROC. ANN. ARTS. 64.03(a)(1)(C) and 64.03(a)(2)(A)

The trial court found identity was not and is not an issue and that Hernandez had not established by a preponderance of the evidence that an exculpatory DNA test result would have changed the outcome of his trial. By his first and fourth issues, Hernandez challenges these findings.

The identity requirement in Chapter 64 specifically relates to the issue of identity as it pertains to the DNA evidence. *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008). Identity is not an issue when a defendant is convicted under party liability for a crime involving multiple criminal actors and biological material collected from the crime scene could have been from any of those criminal actors. *Ex parte Gutierrez*, 337 S.W.3d 883, 894–95 (Tex. Crim. App. 2011); *Pegues v. State*, 518 S.W.3d 529, 535 (Tex. App.— Houston [1st Dist.] 2017, no pet.); *Flores v. State*, 491 S.W.3d 6, 10 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd). In that situation, a DNA test result that does not implicate the convicted person does not undermine his conviction as a party to the offense. *See Ex parte Gutierrez*, 337 S.W.3d at 894–95 ("The bottom line in post-conviction DNA testing is this: Will this testing, if it shows that the biological material does not belong to the defendant, establish, by a preponderance of the evidence, that he did not commit the crime as either a principal or a party?").

In convictions involving accomplices, a defendant can only meet his burden under Article 64.03(a)(2)(A) if he can show that testing, if exculpatory, will establish that he did not commit the crime as either a principal or a party. *Ramirez v. State*, 621 S.W.3d 711, 723 (Tex. Crim. App. 2021). An exculpatory result means only a result excluding the

convicted person as the donor of the DNA. *Hall*, 569 S.W.3d at 655–56 (quoting *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017)).

As Hernandez acknowledges in his brief, the evidence at trial showed that the masked robbers both wore gloves similar to the one recovered from the scene of the crime. No evidence was presented at trial that the single glove recovered specifically belonged to or was worn by Hernandez. An exculpatory DNA result obtained from the glove would therefore not undermine his conviction. *See Ex parte Gutierrez*, 337 S.W.3d at 894. Rather, it would be consistent with Hernandez's conviction under the law of parties, on which the jury was instructed. *See Rivera*, 89 S.W.3d at 60 n.20.

We therefore conclude the trial court did not err in finding identity was and is not an issue and that Hernandez has not shown by a preponderance of the evidence that he would not have been convicted had an exculpatory DNA result been recovered from the glove. *See Ramirez*, 621 S.W.3d at 723; *Ex parte Gutierrez*, 337 S.W.3d at 894–95. Because these elements are dispositive, we do not address Hernandez's other arguments. *See* TEX. R. APP. P. 47.1.

### IV.  CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
3rd day of February, 2022.

7